# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| BISON PIPELINE LLC, | ) | No. 11-8052 |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 102.84 ACRES OF LAND, MORE OR | ) | |
| LESS, LOCATED IN CAMPBELL | ) | |
| COUNTY, STATE OF WYOMING; | ) | |
| BARLOW RANCH, LIMITED | ) | |
| PARTNERSHIP, a Wyoming corporation | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

On Appeal from the United States District Court for the District of Wyoming
The Honorable Judge Nancy D. Freudenthal
D.C. No. 10-CV-89

## SUPPLEMENTAL BRIEF OF APPELLEE/DEFENDANT

Dan B. Riggs
Mistee L. Elliott
Amanda K. Roberts
of LONABAUGH AND RIGGS, LLP
P.O. Drawer 5059
Sheridan, Wyoming 82801
Phone: (307) 672-7444
Fax: (307) 672-2230
dan@lonabaugh.com
mistee@lonabaugh.com
amanda@lonabaugh.com

Attorneys for 102.84 Acres of Land, More or Less, Located in Campbell County,
Wyoming; Barlow Ranch, Limited Partnership

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      The *Greencore* decision is not so oppressive that it violates the Fifth Amendment of the United States Constitution and frustrates the purposes of the Natural Gas Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.      Notwithstanding the holdings in *Greencore*, there were no errors below that compel a new trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF DIGITAL COMPLIANCE AND PRIVACY REDACTIONS  . . . 12

CERTIFICATE OF COMPLIANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## CASES

*Barlow Ranch, LP v. Greencore Pipeline Co.*, 2013 WY 34 (Wyo. Mar. 19, 2013) . . *passim*

*City of Cheyenne v. Frangos*, 487 P.2d 804 (Wyo. 1971) . . . . . . . . . . . . . . . . . . 7, 9, 10

*Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement*, 962 F.2d 1192 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Georgia Power Co. v. Sanders*, 617 F.2d 1112 (5th Circ. 1980) . . . . . . . . . . . . . . . . . . . . 4

*Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 193 (10th Cir. 2002) . . . . . . . . . . . . . . . . . 6

*Int'l Ass'n of Machinists v. Street*, 367 U.S. 740 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jackson v. U.S. Postal Service*, 50 Fed. Appx. 387 (10th Cir. 2002) . . . . . . . . . . . . . . . 11

*Jones v. State*, 2011 WY 115, 256 P.3d 536 (Wyo. 2011) . . . . . . . . . . . . . . . . . . . . . . . 2

*King v. State ex rel. Wyo. Dept. of Transp.*, 2007 WY 116, 161 P.3d 1086 (Wyo. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Reiter v. State*, 2001 WY 116, 36 P.3d 586 (Wyo. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 2

*U.S. v. 10.082 Acres*, 2007 U.S. Dist. LEXIS 22604 (D. Ariz Mar. 27, 2007) . . . . . . . . 4

*Weeks v. Angelone*, 528 U.S. 225 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wheeler v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 245 P.3d 811 (Wyo. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Wyo. Const. art. I, §§ 32 and 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATUTES

Wyo. Stat. Ann. § 1-26-702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Wyo. Stat. § 1-26-704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 9

**SUMMARY**

Throughout the trial and appeal of this matter, the parties approved of and promoted the application of Wyoming law to determine the compensation owed for the takings at issue, agreeing that the Wyoming Eminent Domain Act (the "Act") governed. The *Greencore* decision did not change Wyoming eminent domain law, it simply confirmed that Barlow's interpretation, which was adopted by the district court in the instant case, was correct. Now, because Bison does not agree with the outcome of the case under a proper application of Wyoming law, it claims the Act is unconstitutional and argues for application of federal law, even though federal law similarly requires payment of just compensation, measured as fair market value, and allows for the use of alternative valuation methods. This is another attempt by Bison to argue that only the "before and after test" should apply. Bison, however, can point to no new authority to support this argument, which was already fully addressed by Barlow in its prior briefing.

**ARGUMENT**

I.      **The *Greencore* decision is not so oppressive that it violates the Fifth Amendment of the United States Constitution and frustrates the purposes of the Natural Gas Act.**

Bison's constitutional challenge is not clearly delineated, but is presumably based on its belief that the Act allows landowners to receive something more than just compensation for a partial taking. As the party challenging a statute on constitutional grounds, Bison bears a heavy burden, which includes "the obligation to show both that [it] has a constitutionally

1

protected interest and that it has been infringed in an impermissible way." *Jones v. State*, 2011 WY 115, ¶ 6, 256 P.3d 536, 540 (Wyo. 2011). Bison must "clearly and exactly show the unconstitutionality beyond any reasonable doubt." *Reiter v. State*, 2001 WY 116, ¶ 7, 36 P.3d 586, 589 (Wyo. 2001). This is especially difficult because all laws are presumed to be constitutional. *King v. State ex rel. Wyo. Dept. of Transp.*, 2007 WY 116, ¶ 7, 161 P.3d 1086, 1088 (Wyo. 2007). Further, an unconstitutional construction of a statute must be avoided if possible. *See Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 749 (1961).

Bison cannot satisfy this burden. First, Bison fails to recognize that the landowner, not the condemnor, has the constitutionally protected interest - - the right to receive just compensation for a taking. *See* Wyo. Const. art. I, §§ 32 and 33; *see also* U.S. Const. amend. V. Second, the Wyoming Supreme Court ("WYSC") makes clear in *Greencore* that fair market value has always been the measure for just compensation, consistent with the state and federal Constitutions, and that it continues to be the measure under the 2007 Amendments to the Act, confirming that to ascertain fair market value under Wyo. Stat. Ann. § 1-26-702(b) and § 1-26-704(a)(iii), it is proper to consider evidence of comparable easement sales. *Barlow Ranch, LP v. Greencore Pipeline Co.*, 2013 WY 34, ¶¶15-50 (Wyo. Mar. 19, 2013).

The WYSC explained the history behind adoption of the Act in 1981, noting that the rationale for the Act and subsequent amendments has been stated as follows:

> Impetus for the extensive changes came from increased use of eminent domain proceedings by public utilities and energy related industries, a void in the Wyoming eminent domain law perceived by landowners as allowing abuse of

eminent domain by nongovernmental entities, and accelerating market values of land, making one-time payments for compensation less satisfactory.

*Id.*, ¶ 30 (internal citation omitted).  Furthering the goal of treating landowners fairly by ensuring payment of just compensation, the legislature revised the Act in 2007 to allow, under proper circumstances, consideration of comparable easement and lease transactions to assist in determining fair market value of the interest taken.  As the Court noted,

> Wyoming's legislature grappled with the issue of how best to value condemned easements when it amended the Eminent Domain Act in 2007 and made a specific policy choice to allow the use of comparable sales of easements as a tool. * * * It is not this Court's prerogative to ignore the legislature's policy decision.

*Id.*, ¶ 49 (internal quotations and citations omitted).

Thus, considering historical abuses of eminent domain rights, and the market that has developed in Wyoming for easements and leases granted to companies having the right to condemn, the Wyoming legislature has concluded such easements and leases can be relevant in determining fair market value. As Bison aptly pointed out in prior briefing, "despite a litigant's disagreement with the legislature's policy choice, the [Court] cannot overlook the clear language of the statute." *See* Reply Br. Appellant 16, *quoting Wheeler v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 245 P.3d 811, 817 (Wyo. 2010).

Bison, however, would now like to overlook the Act, arguing for the first time that federal law should apply, even though federal law similarly requires payment of just compensation, measured as fair market value, and does not mandate use of the "before and after test."    *See Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage*

3

*Easement*, 962 F.2d 1192 (6ᵗʰ Cir. 1992) (recognized that valuation of condemned interest

not limited to "before and after"); *see also U.S. v. 10.082 Acres*, 2007 U.S. Dist. LEXIS

22604, 6-8 (D. Ariz Mar. 27, 2007) (federal law requires compensation be equal to "market

value"). Because federal and state law are not inconsistent, there is no basis to apply federal

law to these interests of state concern. *See e.g., Georgia Power Co. v. Sanders*, 617 F.2d

1112, 1120-21 (5ᵗʰ Circ. 1980) (application of state law favored, especially if no conflict

between state and federal law).

Evident from *Greencore,* development of state law defining how just compensation

is best measured has been a long process in Wyoming. It would be improper and

unnecessary to upset this "well-developed state property regime" by applying federal law to

compute just compensation. *See Columbia Gas Transmission Corp.*, 962 F.2d at 1198; *see*

*also, Georgia Power Co.*, 617 F.2d at 1123 (landowners should be compensated in accord

with their state's view of what is just). When the condemnation, as here, involves only

private interests, "absent a showing of legislative intent to the contrary, considerations of

federalism warrant a preference for adoption of state law as the federal rule." *Georgia Power*

*Co.,* 617 F.2d at 1123-24. Further, applying Wyoming law to determine compensation in

this case does not frustrate the purpose of the Natural Gas Act ("NGA"), as explained by the

Sixth Circuit:

> To the extent that compensation under state law might deviate from that under
> a federal rule, we believe this variance, in the aggregate, is far too speculative
> to warrant displacing state law. Furthermore, even if it could be shown that
> state law might result, on average and over time, in consistently greater or
> lesser awards, we seriously doubt that the amount would rise to the level of

frustrating the specific objectives of the Natural Gas Act.

*Columbia Gas Transmission Corp.*, 962 F.2d at 1198.

Bison's allegations to the contrary are unsupported and speculative. The uncontroverted evidence proves that the transactions making up the Dead Horse Hub resulted in compensation rates that were fair and reasonable.[1] Out of these transactions, predominately based on the compensation scheme adopted by the jury in this case, the Dead Horse Hub developed over two decades, and is a great success for the pipeline companies and landowners alike, dispelling the argument that annual payments will be so oppressive as to frustrate federal law.[2]

In sum, legislation that assures landowners are paid fair market value for condemned property does not violate constitutional law or frustrate the purpose of the NGA.

## II.    Notwithstanding the holdings in *Greencore*, there were no errors below that compel a new trial.

Bison alleges several evidentiary errors, primarily premised on the use of comparable easement sales as evidence of fair market value. Bison's criticism of the district court's evidentiary rulings, though, is without merit, especially when considered in light of the *Greencore* decision. Importantly, the rulings must be upheld "unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or

---

[1]*See* Resp. Br. of Appellee 28-30, 47.

[2]Indeed, the entire cost for Bison to obtain pipeline easements at the rate awarded by the jury in this case would result in a minuscule decrease in overall profits. *See* Br. of Amicus Curiae Progressive Pathways, LLC 3-5.

exceeded the bounds of permissible choice in the circumstances." *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 193, 1204 (10th Cir. 2002).

As explained in prior briefing, the district court allowed the parties, at the outset of the case, to vet the issue of whether certain easements and leases offered by Barlow could properly be considered under Wyo. Stat. § 1-26-704(a)(iii).[3] After receiving testimony from both the landowner and company side of the transactions, the district court ruled that all but four of the 21 transactions offered by Barlow were admissible, unless Bison produced evidence to the contrary.[4] At trial, Barlow presented further evidence that the transactions were arms' length, and this evidence was undisputed by Bison.

The WYSC confirmed that this process used by the district court to determine admissibility was appropriate, specifically advising that "each proposed easement transaction should [be] evaluated to determine whether it [is] appropriate evidence of fair market value." *Greencore*, ¶ 53. This analysis requires an inquiry into whether the transaction was fairly negotiated, looking primarily at whether it was tainted by litigation or threats of condemnation. *Id.*, ¶¶ 56-74.

The WYSC reminded that "[a]bsent any showing to the contrary, there is a presumption that the sale was an 'arm's-length' transaction and not under compulsion." *Id.*, ¶ 57 (internal quotations omitted). The Court then reaffirmed that "the mere fact that

---

[3] *See* Resp. Br. of Appellee 4-5.

[4] *See* Resp. Br. of Appellee 5.

property is purchased by one vested with the power of eminent domain does not preclude

admission of evidence regarding the sale, provided the transaction was fair." *Id.*, ¶ 58, *citing*

*City of Cheyenne v. Frangos*, 487 P.2d 804, 806 (Wyo. 1971).  The Court also discussed the

"required location factor", explaining the effect of "needing" the location for the project:

> In the context of pipeline easements, the pipeline route is chosen by the project developer and it will often connect to a facility or another pipeline - that is the nature of the business.  The location of the pipelines, therefore, will be driven by economics, in that the developer will choose the most cost effective route and . . . will make a determination that the location is "required."  When the legislature mandated that only arms' length transactions be considered as comparables, it did so with an understanding of how the mineral industry designs projects and uses the power of eminent domain. * * *  We conclude the legislature's intent was to use the market for comparable easements as a tool to determine fair market value in pipeline condemnation cases.  In order to give effect to that intent, we reject *Coronado's* statement that a transaction is not arms' length simply because the project developer "requires" the easement be placed in a certain location.

*Greencore*, ¶ 61.

Applying this analysis to several of the easements at issue, the WYSC held that the

trial court "erred as a matter of law by ruling that the transactions . . . were not arms' length

because they were placed in 'required' locations." *Id.*, ¶ 62.  Bison makes the same argument

as to the same easements,[5] but fortunately for this Court, *Greencore* is dispositive and

specifically allows the comparable  easements to be considered because the uncontroverted

evidence established that the transactions were fairly negotiated.

The WYSC also addressed the effect of a prior condemnation action on subsequent

---

[5]*See* Opening Br. of Appellant 35-37.

transactions.  The Court held that the trial court "erred as a matter of law in concluding that all the transactions between the parties after a condemnation action were not arms' length," reiterating that,

> the rule requires actual condemnation or threat of condemnation to bar use as a comparable sale.  It does not state that all subsequent transactions between parties who were previously involved in a condemnation action are likewise disqualified as comparable transactions.

*Id*., ¶ 64.

Applying this analysis, the WYSC found that the uncontroverted evidence indicated that transactions between Barlow and Western Gas following a condemnation action in early 2004 "were fairly negotiated, [and] it was improper for the district court to categorically reject all of the easements given by Barlow to Western Gas after the 2004 condemnation action on the grounds they were not arms' length transactions." *Id.*, ¶ 67.  Again, this analysis is directly applicable to the instant case because Bison makes the same complaint about the same easements.[6]

Overall, the WYSC determined that the evidence from both the landowners and the company representatives, did not support the trial court's finding that the companies paid a "premium" to Barlow to avoid condemnation or to placate Barlow and other landowners. *Id*., ¶ 73.  Notably, the ten pipeline easements primarily considered by Barlow's expert in the instant case were among those considered by the WYSC to have been proper evidence of fair market value.  App. 3487:6-12; App.1958.

---

[6]*See* Opening Br. of Appellant 36-37.

8

In addition to being arms' length, the transactions offered must also be comparable. The WYSC noted that "[t]he legislature identified factors to be considered in determining whether an easement or lease is comparable to the condemned easement by specifying 'comparable type, size and location on the same or similar property.'" *Greencore*, ¶ 76, *citing* Wyo. Stat. § 1-26-704(a)(iii)(B) and (C). In determining comparability, it is important to note specific similarities, keeping in mind that comparable sales are not and never can be identical to the subject property. *Id.*, ¶¶ 77, 84. Fair market value based on comparable sales is then "determined by 'making adjustment for prices of those [comparables] that are more similar or dissimilar to condemned property.'" *Id.*, ¶ 84, *quoting Frangos*, 487 P.2d at 807.

Applying these factors, the WYSC determined that the trial court erred in finding that Greencore's easement for its $CO_2$ pipeline was not comparable in type to the easements for natural gas pipelines that were offered by Barlow, concluding that they were "essentially the same." *Id.*, ¶ 81. This error led the trial court to commit further error by relying only on Greencore's easements when determining fair market value of the condemned easement. This was improper because, with the exception of one easement, Greencore failed to provide any evidence of the specific similarities and dissimilarities between the condemned easement and the other easements obtained for the Greencore pipeline. *Id.*, ¶ 84. The same can be said of Bison's evidence of prices paid to others along its pipeline route. It failed to present evidence of specific similarities or dissimilarities that would allow for proper comparison. Barlow, on the other hand, presented evidence of comparability for each transaction offered, including similarity in location, similarity in size and use of easements, and similarity in type

9

of pipelines.  App. 1714, 1720-1958; 3382:18-3398:12; 3399:1-6; 3466:18-3471:23.  This was the only proper evidence of comparable sales, and it is presumed that the jury considered it as instructed.[7]  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (jury presumed to follow its instructions).

Bison also complained that the testimony offered by Barlow's expert appraiser was not appropriate because the expert used comparable easements in generating his opinions. The WYSC advised, though, that such opinions are appropriate, and that it is actually improper for an appraiser to ignore comparable easement sales, which is exactly what Bison's expert did in this case.  *Greencore*, ¶¶ 49 n. 9**,** 84.  The WYSC further explained that "fair market value based on comparable sales is determined by 'making adjustment for prices of those [comparables] that are more similar or dissimilar to condemned property.'" *Id.*, ¶ 84, *quoting Frangos*, 487 P.2d at 807.  Barlow's expert employed this analysis by giving greater weight to certain comparables and making adjustments in price to account for differences, consistent with generally accepted appraisal practices.[8]

To conclude, the *Greencore* decision confirms that the district court did not abuse its discretion in its evidentiary rulings, which essentially mirrored the findings of the WYSC as to the same evidence.

---

[7]*See* App. 1599X, instructing jury to carefully and impartially consider all the evidence.

[8]*See* Resp. Br. of Appellee 29-30.

**Conclusion**

The Act is constitutional and requires just compensation in the form of fair market value be paid to landowners. Bison failed to overcome its heavy burden to show otherwise. Having established that the proper legal principles were applied by the district court in its evidentiary rulings and instructions, great deference must be given to the jury's verdict. *See Jackson v. U.S. Postal Service*, 50 Fed.Appx. 387, 389 (10th Cir. 2002). For the reasons stated herein, and in prior briefing, the verdict in this case should be affirmed.

RESPECTFULLY SUBMITTED this 29th day of April, 2013.

**LONABAUGH AND RIGGS, LLP**

By:/s/ Mistee L. Elliott
    Lonabaugh and Riggs, LLP (Digital)
    Dan B. Riggs, Atty. #5-1444
    Mistee L. Elliott, Atty. #6-3540
    Amanda K. Roberts, Atty. #6-3946
    *Attorneys for 102.84 Acres of Land, More or Less, Located in Campbell County, Wyoming; Barlow Ranch, Limited Partnership*
    P.O. Drawer 5059
    Sheridan, Wyoming 82801
    Phone: (307) 672-7444
    Email: dan@lonabaugh.com
    Email: mistee@lonabaugh.com
    Email: amanda@lonabaugh.com

11

## CERTIFICATE OF DIGITAL COMPLIANCE AND PRIVACY REDACTION

I hereby certify that a copy of the foregoing **SUPPLEMENTAL BRIEF OF APPELLEE/DEFENDANT**, as submitted in Digital Form is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the Endpoint Protection, version 11.0.5002.333, Virus Definition File Dated: 4/29/2013, and, according to the program, is free of viruses. In addition, I certify all required privacy redactions have been made, and with the exception of those redactions, every document submitted in digital form is an exact copy of the written document filed with the clerk.

By: /s/ Mistee L. Elliott
Mistee L. Elliott (Digital)

## CERTIFICATE OF COMPLIANCE

In accordance with this Court's order entered March 27, 2013, the undersigned certifies that this brief complies with the type-volume limitation set forth therein, and that this brief, exclusive of the items listed in F.R.A.P. 32(a)(7)(B)(iii) and 10th Cir. R. 32(b), contains 2,799 words.

By: /s/ Mistee L. Elliott
Mistee L. Elliott (Digital)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 29th day of April, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using the Electronic Service by LexisNexis File & Serve, which sent a Notice of Electronic filing to the counsel of record listed below:

Marcy G. Glenn
mgglenn@hollandhart.com

Kermit C. Brown
kbrown@wyoatty.com

Franklin J. Falen
frank@buddfalen.com

Karen Budd-Falen
karen@buddfalen.com

Isaac N. Sutphin
INsutphin@hollandhart.com

David G. Ditto
dditto@associatedlegal.com

By: /s/ Mistee L. Elliott
Mistee L. Elliott (Digital)

13